## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAWN KEIL on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>Defendant. | Case No.:  6:21-CV-0697 (TJM/TWD)<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

## CLASS ACTION COMPLAINT

Dawn Keil ("Plaintiff") brings this Class Action Complaint against Nationstar Mortgage LLC ("Nationstar" or "Defendant") individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF ACTION

1. This is a consumer protection action brought by Plaintiff and others similarly situated to obtain redress from Nationstar's unauthorized withdrawals of enormous sums of money from borrowers' bank accounts.

2. Specifically, Nationstar participated in unauthorized debits of mortgage payments from borrowers' bank accounts; withdrawing multiple monthly payments at a single time without notice to the borrowers whose mortgages Nationstar services.

3. This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all borrowers from whom Nationstar unlawfully collected funds through improper ACH debit transactions, in violation of New York and Federal law as further set forth herein.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of the Fair Debt Collection Practices Act ("FDCPA") and Electronic Funds Transfers Act ("EFTA") claims under 28 U.S.C. § 1331, 28 U.S.C. § 1337, 15 U.S.C. § 1692k(d) and 15 U.S.C. § 1693m(g).

5. This Court has jurisdiction of the FDCPA, EFTA and the New York State law claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715, in that (i) the putative class contains more than 100 members; (ii) the class claims total more than $5 million; and (iii) there is minimal diversity because Nationstar is a citizen of a different state than Plaintiff or at least one member of the Class.

6. This Court has supplemental jurisdiction of the New York state law claims under 28 U.S.C. § 1367 because these claims are so related to the federal claims over which the Court has original jurisdiction that they form part of the same case or controversy. The federal and state claims in this action share a common nucleus of operative facts, as set forth herein.

7. This Court has personal jurisdiction over Defendant because it transacts business across the United Sates, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States and the State of New York.

8. In accordance with 28 U.S.C. § 1391, venue is proper in this District because this District is where a substantial part of the conduct giving rise to the Plaintiff's claims occurred, where Defendant transacts business, and where Plaintiff resides.

## PARTIES

9. Plaintiff Keil is and, at all relevant times hereto, has been a citizen and resident of New York.

10. Plaintiff Keil is and, at all relevant times hereto, has been the owner of a residential home located in Utica, New York. Plaintiff Keil's home is, and at all relevant times hereto, subject to a mortgage loan that was serviced by Defendant.

11. Defendant Nationstar Mortgage LLC is a Delaware Limited Liability Company with a principal place of business in Coppell, Texas.

12. Nationstar services mortgage loans throughout the country, including in this District.

## FACTUAL ALLEGATIONS

13. Nationstar frequently acts as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) because, upon information and belief, Nationstar obtains the servicing rights to mortgage loans while they are in a state of default.

14. Nationstar's employees, affiliates, directors agents, vendors, and attorneys (including ACI Worldwide) act under the direction and supervision of Nationstar and, therefore, Nationstar is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, vendors and attorneys under, *inter alia*, the theory of *respondeat superior*.

15. Nationstar is a servicer of mortgages for residential home loans. As a mortgage servicer, Nationstar contracts with investors and/or loan owners to collect payments, fees, and

other amounts owed by the homeowner and to provide other "services" to investors relating to the homeowner's loan.

16. Nationstar also occasionally refinances mortgages and becomes the homeowner's mortgage lender, while also still performing the same servicing duties.

17. Upon information and belief, Nationstar services not less than hundreds of thousands of loans throughout the United States, including those of Plaintiff and the putative class.

18. When Nationstar acquires the servicing rights to a particular loan portfolio, a large percentage of the loans contained therein are delinquent as of the effective date of the acquisition.

19. Upon information ad belief, Nationstar allows borrowers such as Plaintiff to authorize Nationstar to initiate automatic recurring debit entries once per month equal to the required monthly periodic payment for the respective loan. This allows the debt collection process to run smoothly, efficiently, and (theoretically) safely.

20. This process is generally initiated through an Automatic Clearing House ("ACH") debit transaction from the borrower's financial institution.

21. Entities such as Nationstar who initiate these monthly debit transactions are commonly referred to as "Originators."

22. Originators initiate an ACH transfer through their Originating Depository Financial Institution ("ODFI"), or a third-party agent.

23. Originators and ODFIs occasionally contract with third parties to act as their agents associated with these transfers.

24. Borrowers such as Plaintiffs are commonly referred to as "Receivers" in that their Receiving Depository Financial Institution ("RDFI") receives the ACH transfer request from the ODFI.

25. Upon information and belief, Nationstar, or its agents, typically will submit a batch file (or files) through the ACH Network to initiate debits from borrowers' accounts.

26. Each borrower who is making payments pursuant to a mortgage should only appear on **one batch file per month**, on a pre-ordained schedule authorized by the borrower.

27. However, in 2021, Nationstar submitted hundreds of thousands of improper ACH debit requests.

28. For example, Nationstar, or its agents, initiated 4 debit requests to Plaintiff Keil's RDFI in April 2021.

29. Upon information and belief, some borrowers had as many as six ACH debit requests to their bank.

30. Plaintiff Keil had not authorized Nationstar to initiate these ACH debit requests.

31. In Plaintiff Keil's case, Nationstar withdrew amounts in excesss of what it was permitted to withdraw each month from Plaintiff's account. Plaintiff Keil, of course, did not authorize this.

32. Upon information and belief, some borrowers had as much as $50,000.00 taken by Nationstar through unauthorized ACH debits.

33. Plaintiff was left without purchasing power while Nationstar's payment processing failures were investigated.

34. Plaintiff was deprived of interest on her savings as a result of Nationstar's unauthorized ACH debits from her bank account.

35. Upon information and belief, tens of thousands of similarly situated borrowers also experienced unauthorized ACH debits on their accounts; resulting in, *inter alia*, lost interest, loss of purchasing power, and overdraft fees.

36. Nationstar unlawfully collected tens of thousands of unauthorized payments from borrowers whose mortgages it services based upon representations on its website that Nationstar withdrew excessive funds from over 480,000 accounts across the country.

37. Nationstar (or its agents) failed to have measures in place to ensure that pre-authorized monthly transactions only occurred *monthly*.

38. Nationstar (or its agents) failed to have measures in place to identify significant abnormalities in its ACH debit transactions *prior* to 'settlement' of the transaction: i.e., the money leaves the borrower's bank account and goes to Nationstar (or its agent).

39. Nationstar (or its agents) failed to have measures in place to identify an out-of-control run on ACH debit transactions prior to settlement of these transactions.

40. Upon information and belief, Nationstar (or its agents) failed to comply with the National Automated Clearing House Association ("NACHA") Operating Rules, which govern ACH transactions and are designed to provide security to the participants.

41. Nor, upon information and belief, did Nationstar (or its agents) comply with Federal regulations and guidelines governing ACH transactions.

42. Instead, **Nationstar repeatedly collected mortgage debt that it was not authorized to collect**.

43. In the case of Plaintiff, Nationstar collected one or more unauthorized payments which it was not authorized to collect.

44. As a result of the foregoing, Plaintiff and Class Members experienced anxiety, frustration, stress, anger, and mental anguish which is fairly traceable to their withdrawal of monies from their bank accounts.

45. As a result of the foregoing, Plaintiff and Class Members were deprived of interest that would have accrued on their personal funds had Nationstar not withdrawn those funds without authorization.

46. Upon information and belief, Nationstar, *inter alia*, violated borrowers' substantive rights to be free from unlawful debt collection, violated borrowers' rights to be able to make informed decisions regarding their personal finances, caused its customers to be charged overdraft fees, and caused their borrowers to have limited purchasing power while accounts were overdrawn.

47. As an example of limited purchasing power, Plaintiff had other bills and living expenses that needed to be paid at the time of the unauthorized ACH debits.

## CLASS ACTION ALLEGATIONS

48. The foregoing allegations are hereby incorporated by reference as if fully restated herein.

49. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action individually and on behalf of the following classes, which are tentatively defined as:

> **New York Class**: All consumers throughout the State of New York whose mortgage loans were serviced by Nationstar who had funds in excess of a single monthly payment withdrawn from their account within the applicable statute of limitations through the filing of this Complaint.
>
> **FDCPA Subclass**: All consumers throughout the State of New York whose mortgage loans were serviced by Nationstar, and whose mortgage servicing was transferred to Nationstar while in a state of default, who had funds in excess of a single monthly payment withdrawn from their account during the applicable statute of limitations through the filing of this Complaint.

50. Excluded from the classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Nationstar and any entity in which Nationstar has a controlling interest in Nationstar and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Class.

51. *Numerosity*: Plaintiff is unable to provide a specific number of members in each of the classes because that information is solely in the possession of Nationstar. Nationstar represented that there were approximately 480,000 people in the country who were affected by their actions. However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Nationstar's business records. Upon information and belief, each class contains at least hundreds of consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable

52. *Commonality*: Common questions of law and fact predominate over any individual issues that may be presented, because Nationstar's improper automatic withdrawals seemingly occurred through a single action or single series of actions allowing thousands of borrowers to have funds withdrawn at substantially the same time. Common questions include, but are not limited to:

   a. whether Nationstar's unlawful withdrawals constitute a violation of the FDCPA;
   b. whether Nationstar's unlawful withdrawals constitute violation(s) of the EFTA;
   c. Whether Nationstar's acts violate New York State law;
   d. Whether Nationstar had adequate measures in place to protect its borrowers from unlawful theft of funds from their bank accounts through inappropriate ACH debit transactions;

    e.  Whether Nationstar complied with relevant industry standards, regulations, and guidelines; and

    f.  The facts and set of circumstances surrounding the cause of these unauthorized ACH debits.

53. *Typicality*: The claims of Plaintiff are typical of the claims of the proposed class, and all are based on the same facts and legal theories, as all such claims arise out of Nationstar's conduct (i.e. unauthorized ACH debits).

54. *Adequate Representation*: Plaintiff is an adequate representatives of the putative class in that she does not have antagonistic or conflicting claims with other members of the putative class. Plaintiff has also retained counsel experienced in the prosecution of complex class actions, specifically including experience with consumer class actions.

55. Neither Plaintiff nor her counsel have any interests that might cause her not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

56. *Predominance and Superiority*: The classes are appropriate for certification because questions of law and fact common to the members of the classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the classes is impracticable. Should individual class members be required to bring separate actions, this Court or courts in other jurisdictions would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this

class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
### Violations of the Fair Debt Collection Practices Act
### 15 U.S.C. § 1692 *et seq.*
### (On behalf of the FDCPA Subclass)

57. The foregoing allegations are hereby incorporated by reference as if fully restated herein.

58. Nationstar often acts as a "debt collector, as defined by the FDCPA, 15 U.S.C. § 1692a(6).

59. Upon information and belief, Nationstar acted as a "debt collector" in servicing Plaintiff's mortgage because the loan was in default at the time Nationstar obtained the servicing rights.

60. Plaintiff and all members of the Subclass are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692a(3) since they are natural persons allegedly obligated to pay a consumer debt.

61. At all material times, Plaintiff's debt and the debts of the FDCPA Subclass were "debt" as defined by the FDCPA 15 U.S.C. § 1692a(5).

62. Nationstar has collected debt in violation of 15 U.S.C. § 1692e by taking action it could not legally take. Each mortgage transaction is subject to a promissory note which prohibits Nationstar's actions. Similarly, each borrower who authorized ACH transactions from their bank account only authorized one debit transaction per month to cover the required periodic monthly payment.

63. FDCPA section 1692(f) states in pertinent part that "a debt collector may not use unfair or unconscionable mean to collect or attempt to collect debt."

64. Nationstar has attempted to collect debt in violation of 15 U.S.C. § 1692f by using unfair and unconscionable means, including collecting amounts not expressly authorized by the borrower, the borrower's mortgage or deed of trust, the borrower's loan note, or permitted by law.

## SECOND CAUSE OF ACTION
### Negligence
### (On behalf of the New York Class)

65. The foregoing allegations are hereby reincorporated by reference as if fully stated herein.

66. Nationstar has a duty to take reasonable precautions to ensure the security of its borrowers' accounts from improper unauthorized automatic withdrawals.

67. Nationstar was negligent in that it:

   a. Failed to take proper steps to ensure that borrowers can safely provide Nationstar with access to their checking accounts so that monthly mortgage payments can be made;

   b. Failed to adequately supervise its employees, vendors, and/or agents (including ACI Worldwide) to ensure that the automatic withdrawal process was safe, reliable, and trustworthy;

   c. Failed to establish reasonable procedures to immediately suspend ACH debit requests from borrowers once a problem was identified;

   d. Failed to establish reasonable procedures to ensure that multiple entries of the same dollar amount and same receiver would not be initiated on the same day;

   e. Failed to ensure that appropriate risk management guidelines for payment processors were followed;

  f. Failed to comply with relevant NACHA Operating Rules;

  g. Failed to comply with Relevant Federal laws and regulations, including but not limited to 31 C.F.R. Part 210, the Uniform Commercial Code, and the Electronic Fund Transfers Act;

  h. Otherwise failed to act as an ordinarily reasonable mortgage servicer would under the conditions then and there existing as will be shown after discovery and at trial; and

  i. Otherwise failed to act as an ordinarily reasonable originator of ACH debit payment transactions would under the conditions then and there existing as will be shown after discovery and at trial.

68. Nationstar's negligence was the proximate cause of Plaintiff's injuries, and the injuries of others similarly situated.

69. Nationstar is aware of the reasonable foreseeability that a series of automatic withdrawals would have disastrous consequences for borrowers, including Plaintiff; including stress, anxiety, and emotional injuries resulting from a loss of funds, even a temporary one.

## THIRD CAUSE OF ACTION
### Conversion
**(on behalf of the New York Class)**

70. The foregoing allegations are hereby incorporated by reference as if fully restated herein.

71. Nationstar converted the personal property of Plaintiff and the New York Class by initiating unauthorized ACH debits from bank accounts owned by Plaintiff and each member of the New York Class.

72. Nationstar engaged in the unauthorized assumption and exercise of the right of dominion over funds in the bank accounts of Plaintiff and each member of the New York Class to the exclusion of the respective account owners' rights.

73. Nationstar's unauthorized debits were wrongful acts that deprived the respective account owners of their rightful property.

74. Thus, Plaintiff and the New York Class were denied access to funds in their bank accounts and their right to dominion over their personal property was wrongfully violated by Nationstar (or its agent).

75. Nationstar's conversion of personal property from Plaintiff and each member of the New York Class were accompanied by outrageous and aggravated conduct (i.e., it was done to tens of thousands of consumers, it was done multiple times to some New York residents, if affected financially vulnerable persons, and because Nationstar (or its agents) financially benefitted from float interest that accrued on the converted funds).

76. Nationstar's conversion of personal property from Plaintiff and the New York Class was fraudulent, willful or wanton conduct that demonstrated indifference to the rights and safety of others; and Nationstar knew or should have known its conduct was reasonably likely to result in harm to Plaintiff and the New York Class.

77. Plaintiff and others similarly situated are entitled to recover compensatory and punitive damages as a result of Nationstar's conversion.

**FOURTH CAUSE OF ACTION**
**Violation of the Electronic Fund Transfers Act**
**15 USC 1693** *et seq.*
**(on behalf of the New York Class)**

78. The foregoing allegations are hereby incorporated by reference as if fully restated herein.

79. The electronic funds transfer authorization that Nationstar was required to enter into with Plaintiff and Class Members would have authorized the servicer of Plaintiff's and Class Members' mortgage loan to initiate electronic funds transfers to only pay for one monthly payment of Plaintiff's and Class Members' monthly mortgage payment.

80. Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

81. "Preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

82. 15 U.S.C. § 1693e(b) provides that, "in the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the [Consumer Financial Protection] Bureau, of the amount to be transferred and the scheduled date of the transfer."

83. Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

84. Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5.

85. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

86. Defendant debited Plaintiff's bank accounts without obtaining written authorization signed or similarly authenticated from Plaintiff or the putative class members for preauthorized electronic fund transfers from Plaintiff's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

87. On at least one occasion, Defendant has debited Plaintiff's and Class Members' bank account without authorization.

88. Defendant initiated electronic funds transfers that were not consistent with the electronic funds authorization that Plaintiff's and Class Members allegedly entered with Defendant.

89. Defendant initiated electronic funds transfers without providing reasonable advance notice to Plaintiff or Class Members of the amount to be transferred and the scheduled date of the transfer.

90. Nationstar violated 15 U.S.C. § 1693e(b) by failing to provide reasonable advance notice to Plaintiff and the putative class of the anount that was going to be transferred and the scheduled date of the transfer, thereby violating the EFTA, 15 U.S.C. § 1693e(b).

91. As a result of these unauthorized transfers, Plaintiff and Class Members suffered damages including but not limited to the loss of the availability of the money, emotional distress from their accounts being drafted without permission and having to demand Defendant correct its errors.

92. Plaintiff, on behalf of herself and the Class, seek the following relief: (a) actual damages; (b) restitution of all funds improperly debited by Plaintiffs' and the Class Member's banks; (c) statutory damages; (d) treble damages pursuant to 15 U.S.C. 1693f(e); (e) incidental and consequential damages suffered due to their inability to pay bills or otherwise use their funds; and (f) an injunction barring such unauthorized charges in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and all others similarly situated pray the Court for the following judgment as set forth below

   a. Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as the class representatives, and appointing the undersigned as Class Counsel;

   b. Adjudging that Nationstar is liable under the causes of action asserted above, and awarding Plaintiffs and the members of the New York Class and the FDCPA Subclass (collectively, "Class Members") actual and statutory damages;

   c. Awarding Plaintiffs and all Class Members their reasonable attorney's fees and costs incurred pursuant to the FDCPA and EFTA;

   d. Adjudging that Nationstar is liable under the causes of action asserted above, and awarding Plaintiffs and the members of the New York Class actual and statutory damages as permitted by the FDCPA, EFTA and New York common law;

   e. For punitive damages to the extent allowed by law;

   f. That the costs of this action be taxed to Nationstar;

   g. For trial by jury on all issues so triable; and

   h. For such other and further relief as this Court deems just and proper.

Respectfully submitted, this 14th day of June, 2021

                                                **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

*Alex R. Straus*
Alex R. Straus (Bar No. 5175419)
280 S. Beverly Drive
Penthouse
Beverly Hills, CA 90212
T: 919 600-5003 F: 919-600-5035

Adam H. Cohen*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York. 11530
T: 212-594-5300
astrauss@milberg.com
acohen@milberg.com

Scott C. Harris*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, North Carolina 27603
T: 919 600-5003 F: 919-600-5035
sharris@milberg.com

Edward H. Maginnis*
**MAGINNIS HOWARD**
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
T: 919-526-0450 F: 919-882-8763

*Attorneys for Plaintiff*

*To seek admission *pro hac vice*